B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Live Oak Banking Company | DEFENDANTS<br>Johnny Wilson Hayes and<br>Selena Martin Hayes |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>William Walt Pettit<br>6230 Fairview Road, Suite 315, Charlotte, NC 28210<br>Telephone: 704-362-9255 | ATTORNEYS (If Known)<br>Jimmy R. Summerlin, Jr.<br>858 2nd Street, NE, Suite, Hickory, NC 28603<br>Telephone: 828-322-4663 |
| PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Dischargeability of debt pursuant to 11 U.S.C. Sections 523(a)(4) and 523(a)(6)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §§523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Johnny Wilson Hayes and Selena Martin Hayes | BANKRUPTCY CASE NO.<br>18-50316 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Western | DIVISION OFFICE<br>Statesville | NAME OF JUDGE<br>Laura T. Beyer |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE     8/15/19 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>William Walt Pettit | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B2500A (Form 2500A) (12/15)

# United States Bankruptcy Court

Western _____ **District Of** _____ Statesville _____

In re  Johnny Wilson Hayes
and Selena Martin Hayes _____ ,
**Debtor**

)
)
)
)
)
)
)
)
)
)
)
)

Case No. __18-50316_____

Chapter __11_____

Live Oak Banking Company _____
**Plaintiff**

v.

Johnny Wilson Hayes
and Selena Martin Hayes _____
**Defendant**

Adv. Proc. No. _____

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:

Clerk, U.S. Bankruptcy Court
401 West Trade Street
Charlotte, NC 28202

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney:

William Walt Pettit
6230 Favirview Road, Suite 315
Charlotte, NC 20210

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____ (Clerk of the Bankruptcy Court)

Date: _____   By: _____(Deputy Clerk)

B2500A (Form 2500A) (12/15)

# CERTIFICATE OF SERVICE

I, _____(name), certify that service of this summons and a copy of the complaint was made _____(date) by:

❑   Mail service: Regular, first class United States mail, postage fully pre-paid, addressed to:

❑   Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

❑   Residence Service: By leaving the process with the following adult at:

❑   Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

❑   Publication: The defendant was served as follows: [Describe briefly]

❑   State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date _____   Signature _____

Print Name: _____

Business Address: _____

_____

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>JOHNNY WILSON HAYES AND<br>SELENA MARTIN HAYES,<br><br>Debtors. | Case No. 18-50316<br><br>Chapter 11 |
| LIVE OAK BANKING COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNNY WILSON HAYES a/k/a<br>JOHN W. HAYES and<br>SELENA MARTIN HAYES,<br><br>Defendants. | Adv. Proc. No.: |

## COMPLAINT

Live Oak Banking Company (hereinafter "Plaintiff"), complaining of Defendants Johnny Wilson Hayes a/k/a John W. Hayes (hereinafter individually "J. Hayes") and Selena Martin Hayes (hereinafter individually "S. Hayes" and together with J. Hayes, "the Defendants"), alleges and avers as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff is state banking association duly organized and operating under the laws of the State of North Carolina with its principal and registered office in Wilmington, North Carolina.

2.     Defendants are citizens and residents of Caldwell County, North Carolina.

1

3.      The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, and the "Referral Order" entered herein by the Chief United States District Court Judge for the Western District of North Carolina.   The Court also has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 151 and 157(b) in that it is a "core proceeding."  To the extent that this matter is not a "core proceeding," which Plaintiff denies, Plaintiff consents to the Bankruptcy Court entering a final and dispositive Order.

4.      Pursuant to 28 U.S.C. §§ 1408 and 1409, venue is proper in this proceeding since the Defendants filed their Chapter 11 proceeding in this District.

## ALLEGATIONS

5.      On or about April 15, 2011, JEMS Healthcare, Inc. doing business as Health Options (hereinafter "JEMS") borrowed the principal sum of $2,000,000.00 from Plaintiff (hereinafter the "First Loan").

6.      In furtherance of the First Loan, JEMS executed and delivered to Plaintiff a Note dated as of April 15, 2011 in the principal amount of $2,000,000.00 (hereinafter the "First Note"), a true copy of which is appended hereto, identified as **Exhibit 1**, and incorporated by reference.

7.      The First Note provides for interest on the principal balance at the Wall Street Journal Prime Rate plus 2.00% per annum (for an initial rate of 5.25% per year) until paid.  See Exhibit 1, p. 2.

8.      Also on or about April 15, 2011, in order to secure the First Note, JEMS executed and delivered to Plaintiff a Security Agreement (the "First Note Security Agreement") thereby granting to Plaintiff a security interest in all of JEMS' equipment, inventory, accounts, instruments, chattel paper, general intangibles, documents, deposit accounts; including but not

2

limited to all property set forth in "Exhibit A" of the First Note Security Agreement (hereinafter the "First Loan Collateral").  A true copy of the First Note Security Agreement is appended hereto, identified as **Exhibit 2**, and incorporated herein by reference.

9.    Plaintiff perfected its security interest in the First Loan Collateral by filing a Financing Statement with the North Carolina Secretary of State.  A true copy of that Financing Statement, including all amendments and continuations thereof, is appended hereto, identified as **Exhibit 3**, and incorporated herein by reference.

10.    Also on or about April 15, 2011, in order to induce Plaintiff to extend credit to or otherwise conduct business with JEMS, J. Hayes executed and delivered to Plaintiff an Unconditional Guarantee (the "First Note Guaranty") thereby unconditionally guaranteeing the payment and performance to Plaintiff of all amounts owing under the First Note.  A true copy of the First Note Guaranty is appended hereto, identified as **Exhibit 4**, and is incorporated herein by reference.

11.    Plaintiff is the current owner and holder of the First Note, the First Note Security Agreement, the First Note Guaranty, and all loan documents executed in furtherance thereof (hereinafter collectively the "First Note Loan Documents").

12.    JEMS and J. Hayes have defaulted under the provisions of the First Note Loan Documents by, among other things, failing to make payments as they became due.

13.    On or about December 20, 2013, JEMS borrowed the principal sum of $1,900,000.00 from Plaintiff (hereinafter the "Second Loan").

14.    In furtherance of the Second Loan, JEMS executed and delivered to Plaintiff a Note dated as of December 20, 2013 in the principal amount of $1,900,000.00 (hereinafter the "Second Note"), a true copy of which is appended hereto, identified as **Exhibit 5**, and

3

incorporated herein by reference.

15.    The Second Note provides for interest on the principal balance at the Wall Street Journal Prime Rate plus 2.00% per annum (for an initial rate of 5.25% per year) until paid.  See Exhibit 5, p. 2.

16.    Also on or about December 20, 2013, in order to secure the Second Note, JEMS executed and delivered to Plaintiff a Security Agreement (the "Second Note Security Agreement") thereby granting to Plaintiff a security interest in all of JEMS' equipment, accounts, instruments, chattel paper, general intangibles, documents, and deposit accounts, including, without limitation, the property set forth in the Health Options Pharmacy FF&E List which is made a part of the Second Note Security Agreement (hereinafter the "Second Loan Collateral").  A true copy of the Second Note Security Agreement is appended hereto, identified as **Exhibit 6**, and incorporated herein by reference.

17.    Plaintiff perfected its security interest in the Second Loan Collateral by filing a Financing Statement with the North Carolina Secretary of State.  A true copy of that Financing Statement is appended hereto, identified as **Exhibit 7**, and incorporated herein by reference.

18.    Also on or about December 20, 2013, in order to induce Plaintiff to extend credit to or otherwise conduct business with JEMS, the Defendants each executed and delivered to Plaintiff an Unconditional Guarantee (the "Second Note Guarantys") thereby each unconditionally guaranteeing the payment and performance to Plaintiff of all amounts owing under the Second Note.  True copies of the Second Note Guarantys are appended hereto, identified as **Exhibits 8 and 9**, and are incorporated herein by reference.

19.    Plaintiff is the current owner and holder of the Second Note, the Second Note Security Agreement, the Second Note Guarantys, and all loan documents executed in furtherance

4

thereof (hereinafter collectively the "Second Note Loan Documents").

## COMMON ALLEGATIONS

20.    Upon information and belief, Plaintiff has a first lien or encumbrance on all the First Loan Collateral and the Second Loan Collateral (hereinafter collectively the "Collateral").

21.    At all times mentioned herein, the Defendants were the managing members of JEMS.

22.    Defendants caused to be prepared and delivered to Plaintiff a balance sheet which set forth the assets and liabilities of JEMS and which represented that the total assets of JEMS as of December 31, 2017 was $3,444,749.04.  A true copy of the balance sheet is appended hereto, identified as **Exhibit 10**, and incorporated herein by reference.

23.    In or around December 2017 through March 2018, the Defendants decided to close and liquidate the business of JEMS and wind up its affairs.

24.    Once this decision was made, the Defendants had a fiduciary duty to all of JEMS's creditors, including Plaintiff, to act in the best interests of all creditors and to pay JEMS's secured creditors from any liquidation, sale or disposition of JEMS's assets, in accordance with the priority of each creditor's lien.

25.    Upon information and belief, the Defendants breached their fiduciary duty to Plaintiff, by their commission or omission of the following acts:

(a) by liquidating all inventory of JEMS and remitting the proceeds therefrom in the sum of $61,000.00 to Cardinal Healthcare;

(b) by failing to collect all third party and store accounts receivable and/or retaining the proceeds from the collection of those accounts;

(c) by remitting various payments to Universal which had a lien on the accounts that was

5

junior to Plaintiff's lien on the same accounts;

(d) by retaining possession of certain property as shown in the balance sheet and failing to liquidate the same and pay the proceeds to Plaintiff;

(e) by failing to recover the accounts receivable due JEMS by and Hayes & Hayes Enterprises, LLC, an affiliate entity owned and controlled by the Defendants, in the sum of $98,000.00;

(f) by failing to recover the accounts receivable due JEMS by Hayes and Hayes Farms (Hayes Family Farms), an affiliate entity owned and controlled by the Defendants, in the sum of $78,648.83;

(g) by failing to recover loans to JEMS's shareholders in the sum of $362,895.25;

(h) by failing to liquidate the office equipment of JEMS which had in excess of $100,000.00 in value and to remit the proceeds thereof to Plaintiff;

26.    On May 23, 2018, the Defendants filed a petition under Chapter 13 of Title 11 of the United States Code. Thereafter, the Defendants converted their proceeding to a Chapter 11 proceeding.

27.    Plaintiff filed two Proofs of Claim in this proceeding which set forth that the outstanding balance due and owing Plaintiff as of the petition date was $1,336,021.62 and $877,421.99, respectively.

## FIRST CLAIM FOR RELIEF

28.    The allegations of paragraph 1 through 27 of Plaintiff's Complaint are incorporated herein by reference.

29.    The acts and omissions of Defendants, as set forth hereinabove, constitute the willful and malicious injury of property of Plaintiff, and Plaintiff is entitled to an Order declaring

6

that its debt is nondischargeable to the extent of at least $10,000.00 or such other amount as established at the trial of this action pursuant to 11 U.S.C. § 523(a)(6).

## SECOND CLAIM FOR RELIEF

30.    The allegations of paragraph 1 through 29 of Plaintiff's Complaint are incorporated herein by reference.

31.    The acts and omissions of Defendants, as set forth hereinabove, constitute fraud or defalcation while acting in a fiduciary duty; and Plaintiff is entitled to an Order declaring that its debt is nondischargeable to the extent of at least $10,000.00 or such other amount as established at the trial of this action pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, Plaintiff prays the Court as follows:

1.    That, in its First Claim for Relief, Plaintiff is entitled to an Order declaring that its debt is nondischargeable to the extent of at least $10,000.00 or such other amount as established at the trial of this action pursuant to 11 U.S.C. § 523(a)(6);

2.    That, in its Second Claim for Relief, Plaintiff is entitled to an Order declaring that its debt is nondischargeable to the extent of at least $10,000.00 or such other amount as established at the trial of this action pursuant to 11 U.S.C. § 523(a)(4); and

3.    For such other and further relief as the Court may deem just and proper.

This the 15th day of August, 2019.

HUTCHENS LAW FIRM LLP
Attorneys for Plaintiff

By:  /s/ William Walt Pettit
William Walt Pettit
N.C. Bar No. 9407
6230 Fairview Road, Suite 315
Charlotte, N.C. 28210
Telephone: (704) 362-9255

7

\\CLT-FILE\ushare\Bankruptcy\Live Oak Banking Company\Hayes, Johnny and Selena (JEMS) 18-50316 NC s\ADV\Complaint (MBS rev. 8.15.19).docx



**EXHIBIT**
_____



U.S. Small Business Administration

# NOTE

| SBA Loan # | |
|---|---|
| SBA Loan Name | HEALTH OPTIONS PHARMACY |
| Date | April _15th_, 2011 |
| Loan Amount | $2,000,000.00 |
| Interest Rate | Wall Street Journal Prime Rate plus 2.00% |
| Borrower | JEMS HEALTHCARE, INC. |
| Operating Company | N/A |
| Lender | LIVE OAK BANKING COMPANY |

1.   PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00), interest on the unpaid principal balance, and all other amounts required by this Note.

2.   DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

THE GUARANTEED PORTION OF THE
OUTSTANDING PRINCIPAL BALANCE
OF THIS NOTE HAS BEEN TRANSFERRED
TO A REGISTERED HOLDER FOR VALUE.
_J0M0WX_  4·21·11

SBA Form 147 (06/03/02) Version 4.1                                    Page 1 of 6

3      PAYMENT TERMS

Borrower must make all payments at the place Lender designates   The payment terms for this Note are:

The interest rate on this Note will fluctuate   The initial interest rate is 5.25% per year.  This initial rate is the prime rate in effect on the first business day of the month in which SBA received the loan application, plus 2 00%   The initial interest rate must remain in effect until the first change period begins.

Borrower must pay principal and interest payments of $21,458.34 every month, beginning two months from the month this Note is dated; payments must be made on the fifth calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period")

The "Prime Rate" is the prime rate in effect on the first business day of the month ( as published in the Wall Street Journal) in which SBA received the loan application, or any interest rate change occurs  Base Rates will be rounded to two decimal places with  004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.00% above the Prime Rate.  Lender will adjust the interest rate on the first calendar day of each change period   The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default   If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

**Borrower may prepay this Note.**  Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice   If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a.  Give Lender written notice;
b.  Pay all accrued interest; and
c.  If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice

All remaining principal and accrued interest is due and payable 10 years from date of Note

**Late Charge:**  If a payment on this Note is more than 15 days late, Lender may charge Borrower a late fee of up to 4% of the unpaid portion of the regularly scheduled payment

4    DEFAULT.

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company

A.    Fails to do anything required by this Note and other Loan Documents,
B     Defaults on any other loan with Lender,
C     Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;
D.    Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;
E     Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;
F     Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note
G.    Fails to pay any taxes when due;
H.    Becomes the subject of a proceeding under any bankruptcy or insolvency law;
I.    Has a receiver or liquidator appointed for any part of their business or property;
J     Makes an assignment for the benefit of creditors,
K     Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;
L.    Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or
M.    Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note

5    LENDER'S RIGHTS IF THERE IS A DEFAULT·

Without notice or demand and without giving up any of its rights, Lender may

A.    Require immediate payment of all amounts owing under this Note;
B     Collect all amounts owing from any Borrower or Guarantor;
C     File suit and obtain judgment,
D.    Take possession of any Collateral; or
E     Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement

6.    LENDER'S GENERAL POWERS

Without notice and without Borrower's consent, Lender may

A.    Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;
B.    Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral.  Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs.  If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;
C.    Release anyone obligated to pay this Note;
D.    Compromise, release, renew, extend or substitute any of the Collateral; and
E.    Take any action necessary to protect the Collateral or collect amounts owing on this Note

7.   WHEN FEDERAL LAW APPLIES

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations
Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice,
foreclosing liens, and other purposes  By using such procedures, SBA does not waive any federal immunity from
state or local control, penalty, tax, or liability  As to this Note, Borrower may not claim or assert against SBA any
local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law

8   SUCCESSORS AND ASSIGNS,

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its
successors and assigns,

9.   GENERAL PROVISIONS.

A     All individuals and entities signing this Note are jointly and severally liable.
B.    Borrower waives all suretyship defenses,
C.    Borrower must sign all documents necessary at any time to comply with the Loan Documents and to
      enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
D.    Lender may exercise any of its rights separately or together, as many times and in any order it chooses
      Lender may delay or forgo enforcing any of its rights without giving up any of them
E     Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this
      Note
F.    If any part of this Note is unenforceable, all other parts remain in effect
G.    To the extent allowed by law, Borrower waives all demands and notices in connection with this Note,
      including presentment, demand, protest, and notice of dishonor.  Borrower also waives any defenses
      based upon any claim that Lender did not obtain any guarantee, did not obtain, perfect, or maintain a lien
      upon Collateral, impaired Collateral; or did not obtain the fair market value of Collateral at a sale,

10      STATE-SPECIFIC PROVISIONS:

NONE

11    BORROWER'S NAME(S) AND SIGNATURE(S).

By signing below, each individual or entity becomes obligated under this Note as Borrower

IN WITNESS WHEREOF, JEMS HEALTHCARE, INC., by and through its President and Secretary, JOHN W. HAYES and SELENA HAYES, have executed this Note this 15th day of April, 2011.

BORROWER:

JEMS HEALTHCARE, INC.
A North Carolina Corporation

BY: _____
JOHN W. HAYES

TITLE: President

ATTEST _____
SELENA HAYES

TITLE  Secretary



EXHIBIT

2

U.S. Small Business Administration

SECURITY AGREEMENT

| SBA Loan # | |
|---|---|
| SBA Loan Name | HEALTH OPTIONS PHARMACY |
| Debtor *(Exact full legal name of individual(s), corporation, LLC, partnership, or other organization)* | JEMS HEALTHCARE, INC. |
| Borrower | JEMS HEALTHCARE, INC. |
| Secured Party | LIVE OAK BANKING COMPANY |
| Date | April 15th, 2011 |
| Note Amount | $2,000,000.00 |

1. DEFINITIONS.

Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2. GRANT OF SECURITY INTEREST.

For value received, the Debtor grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3. OBLIGATIONS SECURED.

This Agreement secures the payment and performance of: (a) all obligations under a Note dated of even date, made by JEMS HEALTHCARE, INC., made payable to LIVE OAK BANKING COMPANY, in the amount of $2,000,000.00 ("Note"),

Including all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Debtor in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations.

The Note and all other obligations secured hereby are collectively called the "Obligations."

4. COLLATERAL DESCRIPTION.

The Collateral in which this security interest is granted is all of the Debtor's property described below, and indicated by an "X" or other mark on the applicable line, now owned or hereafter acquired, together with all replacements, accessions, proceeds, and products.

| | | |
|---|---|---|
| [X] a. Equipment | | [X] f. Chattel paper |
| [ ] b. Fixtures | | [X] g. General intangibles |
| [X] c. Inventory | | [X] h. Documents |
| [X] d. Accounts | | [ ] i. Farm products |
| [X] e. Instruments | | [X] j. Deposit accounts |
| | | [ ] k. Investment property |

[ ] l. Titled motor vehicles, including mobile or manufactured homes (list make, model, and serial #):

_____

_____

[X] m. Other: Insert specific description of other forms of Collateral not included in categories a through k above (for example, specific commercial tort claim, letter-of-credit rights):

Including, but not limited to all property set forth in Exhibit "A". See special stipulations in Exhibit "B" attached hereto and by this reference made a part hereof.

5. RESTRICTIONS ON COLLATERAL TRANSFER.

Debtor will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Debtor's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Debtor may sell inventory in the ordinary course of business on customary terms. Debtor may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6.    MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.

Debtor must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Debtor hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Debtor must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes,

judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7. CHANGES TO DEBTOR'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.

Debtor must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Debtor will pay for the preparation and filing of all documents, Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8. PERFECTION OF SECURITY INTEREST.

Debtor consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Debtor must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect , continue or amend its security interest in the Collateral. Debtor will pay the filing and recording costs of any documents relating to Secured Party's security interest. Debtor ratifies all previous filings and recordings, including financing statements and notations on certificates of title. Debtor will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9. DEFAULT.

Debtor is in default under this Agreement if: (a) Debtor fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Debtor makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Debtor must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Debtor or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Debtor waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

## 10. FEDERAL RIGHTS.

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Debtor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 11. GOVERNING LAW.

Unless SBA is the holder of the Note, in which case federal law will govern, Debtor and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Debtor is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

## 12. SECURED PARTY RIGHTS.

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

## 13. SEVERABILITY.

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

## 14. DEBTOR CERTIFICATIONS.

Debtor certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Debtor's name and not in the name of any other organization or individual; (c) Debtor has the legal authority to grant the security interest in the Collateral; (d) Debtor's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; and (g) Debtor has read and understands the meaning and effect of all terms of this Agreement.

## 15. DEBTOR NAME(S) AND SIGNATURE(S).

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Debtor under this Agreement.

IN WITNESS WHEREOF, JEMS HEALTHCARE, INC., by and through its President and
Secretary, JOHN W. HAYES and SELENA HAYES, have executed this Security Agreement this
_____15th_____ day of April, 2011.

JEMS HEALTHCARE, INC.
A North Carolina Corporation

BY: _____
    JOHN W. HAYES

TITLE: President

ATTEST: _____
        SELENA HAYES

TITLE: Secretary

EXHIBIT "A"

*Computer Hardware*

Acer Desktops  (3)
Sharp Monitors  (2)
Acer Monitors  (5)
HP  Compaq DX 2000 Micro Tower Desktop  (2)
Viewsonic Monitors (2)
Dell Optiplex  GX520 Desktop (1)
Dell Optiplex 756 Desktop (1)
Dell Monitor (1)
Acer Laptop (1)
HP Server (1)
Okidata Microline 321Turbo Printers (6)
HP LaserJet 1018 Printer (1)
HP LaserJet 4100 (1)
Lexmark Optra T 514/516 printers (2)
VPN Server
Fax machines  (45)
Tharo Micro labeling system  (1).
DocuTrack Server (Dell CN-0DR063-71070-771-0926)

*Computer Software*

DocuTrak
Qs1 Pharmacy Operating System (for filling/dispensing/billing prescriptions)
Qs1 Accounts Receivable Module
Qs1 Nursing Home Processing Module
VPN Software
Windows XP Operating System
Peachtree Accounting Software
Accu-Time (employee time clock program)
Easy Label software (used for Tharo Micro labeling system)
Facts & Comparisons

*Dispensing Equipment/Supplies*

Medication Carts in Facilities and storage for future use (64)
MTS Packaging System (for bubble packaging) (1)
Jun-Air Compressor for MTS Packaging System (1)
Kirby Lester pill counter (1)
Transfer Carts for Opus (4)

*Dispensing Equipment/Supplies continued*
Opus cassettes for medication dispensing (15,500)
Opus cassette lid for medication dispensing (5,000)
Opus bins (used to place all opus cassettes in for each patient) (2000)
Bubble packaging cards for dispensing medications (1,500)
Mini Bubble packaging cards for dispensing medications (500)
Labels for dispensing (2,500)
Totes and Containers to transport medications (30)

*Fixtures*

Shelving for medications (10 units)
Shelving for future expansions (20 units)
File cabinets (6)
Desks/workstations (4)

*Other*

LTC Policies & Procedures
Refrigerators (2)
Pharmacy reference library (books & guidelines)
Hand trucks (5)

EXHIBIT "B"

1.  The Loan secured by this lien was made under a United States Small Business
    Administration (SBA) nationwide program which uses tax dollars to assist small
    business owners.  If the United States is seeking to enforce this document, then under
    SBA regulations:

    a) When SBA is the holder of the Note, this document and all documents evidencing
       or securing this Loan will be construed in accordance with federal law.

    b) Secured Party or SBA may use local or state procedures for purposes such as filing
       papers, recording documents, giving notice, foreclosing liens, and other purposes.
       By using these procedures, SBA does not waive any federal immunity from local or
       state control, penalty, tax or liability.  No Debtor or Guarantor may claim or assert
       against SBA any local or state law to deny any obligation of Debtor, or defeat any
       claim of SBA with respect to this Loan.

    Any clause in this document requiring arbitration is not enforceable when SBA is the
    holder of the Note secured by this instrument.

    The Debtor shall pay all of the Secured Party's reasonable court costs incurred in any
    proceeding in any Bankruptcy proceeding filed by or against the Secured Party, which
    shall include, but shall not be limited to filing a proof of claim, actions to obtain relief of
    stay or secure adequate protection, and any adversary action in Bankruptcy.

2.  Debtor hereby grants a security interest in all of the following property of the Debtor,
    whether now owned or hereafter acquired or arising, wherever located, including without
    limitation, on the real property located at 510 Central Street, Hudson, North Carolina 28638:

    a.   All rights of the Debtor to payment for goods sold or leased, or to be sold or to be
         leased, or for services rendered, howsoever evidenced or incurred, including,
         without limitation, all accounts, instruments, chattel paper and general intangibles,
         all returned or repossessed goods and all books, records, computer tapes, programs,
         and ledger books arising therefrom or relating thereto, whether now owned or
         hereafter acquired or arising.

    b.   All inventory of Debtor, whether now owned or hereafter acquired, wherever
         located, including, without limitation, all goods of Debtor held for sale or lease or
         furnished or to be furnished under contracts of service, all goods held for display or
         demonstration, goods on lease or consignment, returned and repossessed goods, all
         raw materials, work-in-progress, finished goods and supplies used or consumed in
         Debtor's business, together with all returns, repossessions, substitutions,
         replacements, parts, additions, accessions and all documents, documents of title,
         dock warrants, dock receipts, warehouse receipts, bills of lading or orders, for the
         delivery of all, or any portion, of the foregoing.

c.   All equipment of the Debtor, including, without limitation, all machinery, furniture, furnishings, leasehold improvements, fixtures, forklifts, dies and tools and personal property of any kind of Debtor, together with all accessories and attachments thereto, all replacements and substitutes used or useful in the Debtor's business, whether now owned or hereafter acquired or arising. Some of the foregoing are or may become fixtures affixed to the real property described herein.

d.   All of Debtor's present and future right, title and interest in and to all contracts, agreements, plans, governmental authorizations, consents, licenses, approvals, permits and other documents that concern or relate to the Land or the business of the Debtor and/or the construction of improvements on the Land.

e.   All property of Debtor left with Secured Party or in its possession now or hereafter and any balance or deposit account of Debtor and all drafts, checks and other items deposited in or with Secured Party by Debtor for collection or safekeeping, with full authority given Secured Party, upon the occurrence of any Event of Default as set forth in the various loan documents between Debtor and Secured Party, to charge any or all such indebtedness of Debtor without notice or demand against any obligation secured hereby.

f.   All general intangibles now owned or hereafter acquired by the Debtor.

g.   All products and proceeds (including insurance proceeds, pre-petition and post-petition bankruptcy proceeds) arising from or in any way relating to any or all of the collateral described above.

3.   Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

4.   Debtor represents and warrants the following:

a)   The Debtor JEMS HEALTHCARE, INC., is a corporation organized under the laws of the State of NORTH CAROLINA. The Debtor's mailing address is 112 Legion Road, Hudson, North Carolina 28638 and its federal identification number is 27-4666696.

b)   "JEMS HEALTHCARE, INC." is the correct legal name of the Debtor indicated on the public record of the Debtor's jurisdiction of organization that shows the Debtor to be organized.

5.   Debtor covenants the following so long as any of the Obligations shall remain outstanding and unless Secured Party shall otherwise consent in writing:

a)   The Debtor shall not merge or consolidate into, or transfer of any of the Collateral to any other Person.

b) The Debtor shall not change its name unless it has given the Secured Party thirty (30) days' prior written notice thereof and executed or authorized, at the request of the Secured Party, such additional financing statements to be filed in such jurisdictions as the Secured Party may deem necessary or desirable in its sole discretion.

c) The Debtor shall, at any time and from time to time, whether or not the Official Text of Revised Article 9, 2000 Revision, of the Uniform Commercial Code promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws or a version thereof ("Uniform Revised Article 9") has been adopted in any particular jurisdiction, take such steps as the Secured Party may reasonably request for the Secured Party (i) to obtain an acknowledgment, in form and substance reasonably satisfactory to the Secured Party, of any bailee having possession of any of the Collateral, stating that the bailee holds possession of such Collateral on behalf of the Secured Party, (ii) to obtain "control" of any investment property, deposit accounts, letter-of-credit rights, or electronic chattel paper (as such terms are defined by Revised Article 9 with corresponding provisions thereof defining what constitutes "control" for such items of Collateral), with any agreements establishing control to be in form and substance reasonably satisfactory to the Secured Party, and (iii) otherwise to insure the continued perfection and priority of the Secured Party's security interest in any of the Collateral and of the preservation of its rights therein, whether in anticipation of or following the effectiveness of Revised Article 9 in any jurisdiction. If the Debtor shall at any time, whether or not Uniform Revised Article 9 has been adopted in any particular jurisdiction, acquire a "commercial tort claim" (as such term is defined in Revised Article 9) [with a claim for damages in excess of $1,000,000], the Debtor, as the case may be, shall promptly notify the Secured Party thereof in writing, providing a reasonable description and summary thereof, and shall execute a supplement to this Security Agreement granting a security interest in such commercial tort claim to the Secured Party.

6. The Debtor hereby authorizes Secured Party, its counsel or its representative, at any time and from time to time, to file without the signature of the Debtor, as permitted by law, financing statements and amendments that describe the collateral covered by such financing statements as "all assets of the Debtor", "all personal property of the Debtor" or words of similar effect, in such jurisdictions as the Agent may deem necessary or desirable in order to perfect the security interests granted by the Debtor under this Security Agreement.

7. It is a default of the Loan if any one or more of the following events occur (an "Event of Default") under this Agreement: (a) failure of the Debtor to pay any of the Debtor's liabilities as and when due and payable, after giving effect to any applicable grace period; (b) failure of the Debtor to perform, observe, or comply with any of the provisions of this Agreement or of any of the other Loan Documents, after giving effect to any applicable grace period; (c) the occurrence of an Event of Default (as defined therein) under any of the other Loan Documents; (d) any information contained in any financial statement, application, schedule, report, or any other document given by the Debtor or by any other person in connection with the Debtor's liabilities, with the Collateral, or in any of the Loan Documents, is not in all material respects true and accurate or the Debtor or such other

person omitted to state any material fact or any fact necessary to make such information not misleading; (e) the Debtor is generally not paying debts as such debts become due; (f) the filing of any petition for relief under any provision of the Federal Bankruptcy Code or any similar state law is brought by or against the Debtor; (g) an application for the appointment of a receiver for, the making of a general assignment for the benefit of creditors by or the insolvency of, the Debtor, which is not discharged within thirty (30) days; (h) the dissolution, merger, consolidation, or reorganization of the Debtor; (i) suspension of the operation of the Debtor's present business; (j) the determination in good faith by the Secured Party that a material adverse change has occurred in the financial condition of the Debtor from the condition set forth in the most recent financial statement of the Debtor heretofore furnished to the Secured Party, or from the financial condition of the Debtor as heretofore most recently disclosed to the Secured Party in any other manner; or (k) any amendment to or termination of a financing statement naming the Debtor as debtor and the Secured Party as secured party, or any correction statement with respect thereto, is filed in any jurisdiction by any party other than the Secured Party or its counsel without the prior written consent of the Secured Party.

File Number: 2011003279.5A
Date Filed: 4/15/2011 2:00:00 PM
Elaine F. Marshall
NC Secretary of State

**EXHIBIT**
**3**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
TB

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

J. BRADFORD SIMPSON
DAVIS, PICKREN & SEYDEL
285 PEACHTREE CENTER AVE NE,
STE 2300
ATLANTA, GEORGIA 30303

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| JEMS HEALTHCARE, INC. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 510 CENTRAL STREET | HUDSON | NC | 28638 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
| | | CORPORATION | NORTH CAROLINA | C3306482 □ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| HEALTH OPTIONS PHARMACY | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 510 CENTRAL STREET | HUDSON | NC | 28638 | USA |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
| | | DBA | NORTH CAROLINA | N/A ☑ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LIVE OAK BANKING COMPANY | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2605 IRON GATE DRIVE, SUITE 100 | WILMINGTON | NC | 28412 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ALL THOSE ITEMS OF PROPERTY DESCRIBED IN SCHEDULE 1 ATTACHED HERETO AND MADE A PART
HEREOF, INCLUDING THOSE ITEMS OF PROPERTY WHICH MAY BE OR BECOME LOCATED AT 510 CENTRAL
STREET, HUDSON, NORTH CAROLINA 28638

FOR FURTHER STIPULATIONS SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum | | ☐ Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILE WITH SECRETARY OF STATE OF NORTH CAROLINA (23000.03)

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# SCHEDULE 1

DEBTOR:                   JEMS HEALTHCARE, INC.
                                  D/B/A HEALTH OPTIONS PHARMACY

SECURED PARTY:       LIVE OAK BANKING COMPANY

DESCRIPTION OF
COLLATERAL:

All of the following property of the Debtor, whether now owned or hereafter acquired or arising, including without limitation, on the property known as 510 Central Street, Hudson, North Carolina 28638:

1.      All rights of the Debtor to payment for goods sold or leased, or to be sold or to be leased, or for services rendered, howsoever evidenced or incurred, including, without limitation, all accounts, instruments, chattel paper and general intangibles, all returned or repossessed goods and all books, records, computer tapes, programs, and ledger books arising therefrom or relating thereto, whether now owned or hereafter acquired or arising.

2.      All inventory of Debtor, whether now owned or hereafter acquired, wherever located, including, without limitation, all goods of Debtor held for sale or lease or furnished or to be furnished under contracts of service, all goods held for display or demonstration, goods on lease or consignment, returned and repossessed goods, all raw materials, work-in-progress, finished goods and supplies used or consumed in Debtor's business, together with all returns, repossessions, substitutions, replacements, parts, additions, accessions and all documents, documents of title, dock warrants, dock receipts, warehouse receipts, bills of lading or orders, for the delivery of all, or any portion, of the foregoing.

3.      All equipment of the Debtor, including, without limitation, all machinery, furniture, furnishings and trade fixtures, of any kind of Debtor, together with all accessories and attachments thereto, all replacements and substitutes used or useful in the Debtor's business, whether now owned or hereafter acquired or arising, including, but not limited to, the items referred to in Exhibit "B" attached hereto and by this reference made a part hereof.

4.      All of Debtor's present and future right, title and interest in and to all contracts, agreements, plans, governmental authorizations, consents, licenses, approvals, permits and other documents that concern or relate to the Land or the business of the Debtor and/or the construction of improvements on the Land.

5.      All property of Debtor left with Secured Party or in its possession now or hereafter and any balance or deposit account of Debtor and all drafts, checks and other items

01102205004 Received: 4/15/2011

deposited in or with Lender by Debtor for collection or safekeeping, with full authority given Secured Party, upon the occurrence of any Event of Default as set forth in the various loan documents between Debtor and Secured Party, to charge any or all such indebtedness of Debtor without notice or demand against any obligation secured hereby.

6.   All general intangibles now owned or hereafter acquired by the Debtor.

7.   All products and proceeds (including insurance proceeds, pre-petition and post-petition bankruptcy proceeds) arising from or in any way relating to any or all of the collateral described above.

01102205004 Received: 4/15/2011

EXHIBIT "A"

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a)    When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b)    Secured Party or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

The Debtor shall pay all of the Secured Party's reasonable court costs incurred in any proceeding in any Bankruptcy proceeding filed by or against the Debtor, which shall include, but shall not be limited to filing a Proof of Claim, actions to obtain Relief of Stay or secure Adequate Protection, and any adversary action in Bankruptcy.

01102205004 Received: 4/15/2011

# EXHIBIT "B"

## *Computer Hardware*

Acer Desktops  (3)
Sharp Monitors  (2)
Acer Monitors  (5)
HP  Compaq DX 2000 Micro Tower Desktop  (2)
Viewsonic Monitors (2)
Dell Optiplex  GX620 Desktop (1)
Dell Optiplex 756 Desktop (1)
Dell Monitor (1)
Acer Laptop (1)
HP Server (1)
Okidata Microline 321Turbo Printers (6)
HP LaserJet 1018 Printer (1)
HP LaserJet 4100 (1)
Lexmark Optra T/514/516 printers (2)
VPN Server
Fax machines  (45)
Tharo Micro labeling system  (1)
* DocuTrack Server (Dell CN-0DR063-71070-771-0926)

## *Computer Software*

*       DocuTrak
**      Qs1 Pharmacy Operating System (for filling/dispensing/billing prescriptions)
***     Qs1 Accounts Receivable Module
****    Qs1 Nursing Home Processing Module
VPN Software
Windows XP Operating System
Peachtree Accounting Software
Accu-Time (employee time clock program)
Easy Label software (used for Tharo Micro labeling system)
Facts & Comparisons

## *Dispensing Equipment/Supplies*

Medication Carts in Facilities and storage for future use (64)
MTS Packaging System (for bubble packaging) (1)
Jun-Air Compressor for MTS Packaging System (1)
Kirby Lester pill counter (1)
Transfer Carts for Opus  (4)

01102205004 Received: 4/15/2011

## *Dispensing Equipment/Supplies continued*

Opus cassettes for medication dispensing (15,500)
Opus cassette lid for medication dispensing (5,000)
Opus bins (used to place all opus cassettes in for each patient)  (2000)
Bubble packaging cards for dispensing medications (1,500)
Mini Bubble packaging cards for dispensing medications (500)
Labels for dispensing (2,500)
Totes and Containers to transport medications (30)

## *Fixtures*

Shelving for medications (10 units)
Shelving for future expansions (20 units)
File cabinets (6)
Desks/workstations (4)

## *Other*

LTC Policies & Procedures
Refrigerators  (2)
Pharmacy reference library (books & guidelines)
Hand trucks   (5)

\*      Value of DocuTrack Server and Software is approximately $100,000.00

\*\*     Value of Qs1 pharmacy software is approximately $25,000.00

\*\*\*   Value of Accounts Receivable Module is approximately $6,500.00

\*\*\*\* Value of Nursing Home Processing Module is approximately $ 9,500.00

| File Number: 20130058267F |
| Date Filed: 6/17/2013 11:43:00 AM |
| Elaine F. Marshall |
| NC Secretary of State |

# UCC FINANCING STATEMENT
# FILER INFORMATION

CONTACT INFORMATION FOR FILER:

| CONTACT EMAIL | CONTACT NAME | CONTACT PHONE | CONTACT FAX |
|---|---|---|---|
| FilingDept@cscinfo.com | Corporation Service Company | 800-858-5294 | 800-345-6059 |

SEND ACKNOWLEDGEMENT TO:

| PACKET SEQ# | CLIENT'S ACCOUNT # | | |
|---|---|---|---|
| 23598441944734-001 | | | |
| ORGANIZATION NAME | | | |
| Corporation Service Company | | | |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE |
| 801 Adlai Stevenson Dr | Springfield | IL | 62703 |
| COUNTY | COUNTRY | | |
| | USA | | |

# FILE RECORD

RECORD DATA (UNIQUE SEQUENTIAL ID:0001)

| FILING TYPE | AMENDMENT TYPE | AMENDMENT ACTION | INITIAL FILENUMBER |
|---|---|---|---|
| Amendment | Amendment Parties | Secured Party Change | 20110032795A |
| ADDITIONAL INFORMATION | | | |
| FILERS UNIQUE ID | | | |
| Debtor:HEALTH OPTIONS PHARMACY    [75790522] | | | |

AFFECTED PARTY:

| ORGANIZATION NAME |
|---|
| LIVE OAK BANKING COMPANY |

AUTHORIZED SECURED PARTY:

| ORGANIZATION NAME |
|---|
| LIVE OAK BANKING COMPANY |

SECURED PARTY DATA (UNIQUE SEQUENTIAL ID: 0001)

| ORGANIZATION NAME | | | |
|---|---|---|---|
| LIVE OAK BANKING COMPANY | | | |
| TAX ID #:  SSN OR EIN | | | |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE |
| 1741 TIBURON DRIVE | WILMINGTON | NC | 28403 |
| COUNTY | COUNTRY | | |
| | USA | | |



File Number: 20160011162A
Date Filed: 2/4/2016 11:02:00 AM
Elaine F. Marshall
NC Secretary of State

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company

B. E-MAIL CONTACT AT FILER (optional)
FilingDept@cscinfo.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20110032795A

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)
6a. ORGANIZATION'S NAME
Jems Healthcare, Inc./ dba Health Options Pharmacy
OR
6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)
7a. ORGANIZATION'S NAME
OR
7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor
9a. ORGANIZATION'S NAME
LIVE OAK BANKING COMPANY
OR
9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
Debtor:Jems Healthcare, Inc./ dba Health Options Pharmacy    [111481156]

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)



EXHIBIT
4



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | HEALTH OPTIONS PHARMACY |
| Guarantor | JOHN W. HAYES |
| Borrower | JEMS HEALTHCARE, INC. |
| Lender | LIVE OAK BANKING COMPANY |
| Date | April _15th_, 2011 |
| Note Amount | $2,000,000.00 |

1.  **GUARANTEE:**

    Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  **NOTE:**

    The "Note" is the promissory note dated of even date in the principal amount of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00), from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  **DEFINITIONS:**

    "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

    "Loan" means the loan evidenced by the Note.

    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
C. Release any Borrower or any guarantor of the Note;
D. Compromise or settle with the Borrower or any guarantor of the Note;
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;
F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and
H. Exercise any rights it has, including those in the Note and other Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;
2) Redeem any Collateral before or after Lender disposes of it;
3) Have any disposition of Collateral advertised; and
4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;
2) Presentment, dishonor, protest, or demand;
3) Execution of the Note;
4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
5) Any change in the financial condition or business operations of Borrower or any guarantor;
6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;
2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
3) Lender or others improperly valued or inspected the Collateral;
4) The Collateral changed in value or was neglected, lost, destroyed, or underinsured;
5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;

7)   Lender did not conduct a commercially reasonable sale;

8)   Lender did not obtain the fair market value of the Collateral;

9)   Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)  Lender made errors or omissions in Loan Documents or administration of the Loan;

12)  Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13)  Lender impaired Guarantor's suretyship rights;

14)  Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15)  Borrower has avoided liability on the Note; or

16)  Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.     **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.     **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.     **GENERAL PROVISIONS:**

A.    ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.    SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.    SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.    JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.    DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.    FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.    LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.    ORAL STATEMENTS NOT BINDING. Guarantor may not use oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.    SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.    CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10.    STATE-SPECIFIC PROVISIONS:

NONE

11.   GUARANTOR ACKNOWLEDGEMENT OF TERMS:

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.   GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

IN WITNESS WHEREOF, JOHN W. HAYES has executed this Guaranty as of the *15th* day of April, 2011.

GUARANTOR:

_____ (SEAL)
JOHN W. HAYES



**U.S. Small Business Administration**

EXHIBIT

5

U.S. Small Business Administration

# NOTE

| | |
|---|---|
| SBA Loan # | |
| SBA Loan Name | Health Options LTC |
| Date | December 30, 2013 |
| Loan Amount | $1,900,000.00 |
| Interest Rate | Variable, Prime Rate + 2.00% |
| Borrower | JEMS Healthcare, Inc. |
| Operating Company | N/A |
| Lender | Live Oak Banking Company |

1.  PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of One Million Nine Hundred Thousand and No/100 Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2.  DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

This Note will mature in 10 years from date of Note.

The interest rate on this Note will fluctuate. The initial interest rate is 5.25% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.00%. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower must pay principal and interest payments of $20,385.42 every month, beginning two months from the month this Note is dated; payments must be made on the fifth calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.00% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment: Notwithstanding any provision in this Note to the contrary:

    Borrower may prepay this Note. Borrower may prepay 20% or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:

    a. Give Lender written notice;
    b. Pay all accrued interest; and
    c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date Lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of Note.

Late Charge: If a payment on this Note is more than 15 days late, Lender may charge Borrower a late fee of up to 4.00% of the unpaid portion of the regularly scheduled payment.

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower
or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;

B.  Defaults on any other loan with Lender;

C.  Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect
     Borrower's ability to pay this Note;

G.  Fails to pay any taxes when due;

H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.  Has a receiver or liquidator appointed for any part of their business or property;

J.  Makes an assignment for the benefit of creditors;

K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect
     Borrower's ability to pay this Note;

L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior
     written consent;  or

M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to
     pay  this Note.


5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;

B.  Collect all amounts owing from any Borrower or Guarantor;

C.  File suit and obtain judgment;

D.  Take possession of any Collateral; or

E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.


6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.  Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan
     Document, and  preserve or dispose of the Collateral.  Among other things, the expenses may include payments
     for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's
     fees and costs.  If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the
     expenses to the principal balance;

C.  Release anyone obligated to pay this Note;

D.  Compromise, release, renew, extend or substitute any of the Collateral; and

E.  Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

   A. All individuals and entities signing this Note are jointly and severally liable.

   B. Borrower waives all suretyship defenses.

   C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

   D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

   E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

   F. If any part of this Note is unenforceable, all other parts remain in effect.

   G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10.  STATE-SPECIFIC PROVISIONS:

None.

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

JEMS HEALTHCARE, INC.,
a North Carolina corporation

By:_____

John W. Hayes, President

(CORPORATE SEAL)





U.S. Small Business Administration

## SECURITY AGREEMENT

| SBA Loan # | |
|---|---|
| SBA Loan Name | Health Options LTC |
| Debtor | JEMS Healthcare, Inc. |
| Borrower | JEMS Healthcare, Inc. |
| Secured Party | Live Oak Banking Company |
| Date | December 20, 2013 |
| Note Amount | $1,900,000.00 |

1. DEFINITIONS.

Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2. GRANT OF SECURITY INTEREST.

For value received, the Debtor grants to the Secured Party a security interest in the property described below in Paragraph 4 (the "Collateral").

3. OBLIGATIONS SECURED.

This Agreement secures the payment and performance of: (a) all obligations under a Note dated December 20 2013, made by JEMS Healthcare, Inc., made payable to Live Oak Banking Company, in the amount of $1,900,000.00 ("Note"), including costs all and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Debtor in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations. The Note and all other obligations secured hereby are collectively called the "Obligations."

4. COLLATERAL DESCRIPTION.

The Collateral in which this security interest is granted is all of the Debtor's property described below, and indicated by an "X" or other mark on the applicable line, now owned or hereafter acquired, together with all replacements, accessions, proceeds, and products.

☒ a. Equipment                                          ☒ f. Chattel Paper

☐ b. Fixtures                                           ☒ g. General Intangibles

☐ c. Inventory                                          ☒ h. Documents

☒ d. Accounts                                           ☐ i. Farm Products

☒ e. Instruments                                        ☒ j. Deposit Accounts

                                                        ☐ k. Investment Property

☐ l. Titled motor vehicles, including mobile or manufactured homes (list make, model, and serial #):

_____

_____

☐ m. Other: Insert specific description of other forms of Collateral not included in categories a through k above (for example, specific commercial tort claim, letter-of-credit rights):

_____

_____

5. RESTRICTIONS ON COLLATERAL TRANSFER.

Debtor will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Debtor's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Debtor may sell inventory in the ordinary course of business on customary terms. Debtor may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6. MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.

Debtor must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Debtor hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Debtor must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7. CHANGES TO DEBTOR'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.

Debtor must notify Secured Party by written or electronic communication not less than thirty (30) days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Debtor will pay for the preparation and filing of all documents, Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8. PERFECTION OF SECURITY INTEREST.

Debtor consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Debtor must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Debtor will pay the filing and recording costs of any documents relating to Secured Party's security interest. Debtor ratifies all previous filings and recordings, including financing statements and notations on certificates of title. Debtor will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9. DEFAULT.

Debtor is in default under this Agreement if: (a) Debtor fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Debtor makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Debtor must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Debtor or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Debtor waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10. FEDERAL RIGHTS.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law; (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of this Note secured by this instrument.

11.  GOVERNING LAW.

Unless SBA is the holder of the Note, in which case federal law will govern, Debtor and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Debtor is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12.  SECURED PARTY RIGHTS.

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously.   Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies.   Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13.  SEVERABILITY.

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

14.  DEBTOR CERTIFICATIONS.

Debtor certifies that:  (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Debtor's name and not in the name of any other organization or individual; (c) Debtor has the legal authority t o grant the security interest in the Collateral; (d) Debtor's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; and (g) Debtor has read and understands the meaning and effect of all terms of this Agreement.

15.  DEBTOR NAME(S) AND SIGNATURE(S).

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Debtor under this Agreement.

JEMS HEALTHCARE, INC.,
a North Carolina corporation

By: _____
     John W. Hayes, President

        (CORPORATE SEAL)

# Health Options Pharmacy
## FF&E LIST

Copier (1) Sharp MX-M450N Serial # 75008230
Computer CPU (19) various manufactures IBM, Dell
Computer Monitors (30) Various manufacturers
Okinawa Printers (3)
Lexmark Printers (2)
Apollo 3 printer (1)
HP Printers (3)
Zebra Printers (4)
DocuTrack Server (1) Dell Serial FWK8R-RT6P3-TVPG9-KD63F
Qs1 Server (1) Dell Serial Q48P9-P9TC4-65QCP-82VGB
Scanner (1) Cannon
Scanner (1) HP
Refrigerators w/ freezer (2)
Refrigerator w/o freezer (1)
Fax machines (60)
MTS Packaging System (1)
Computer Desk Work Stations (3)
Conference Table (1)
Conference Table Chairs (6)

12/3/13

File Number: 20130110236M
Date Filed: 11/22/2013 8:55:00 AM
Elaine F. Marshall
NC Secretary of State

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**EXHIBIT**

tabbies    7

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company

B. E-MAIL CONTACT AT FILER (optional)
FilingDept@cscinfo.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| JEMS Healthcare, Inc. | | | | |
| OR  1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 112 Legion Road | Hudson | NC | 28638 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LIVE OAK BANKING COMPANY | | | | |
| OR  3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3b. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1741 TIBURON DRIVE | WILMINGTON | NC | 28403 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Attachment

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
[81928301]

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

12. ADDITIONAL SPACES FOR ITEM 4(Collateral)

All tangible and intangible property of the Debtor, whether now owned or hereafter acquired, wherever located, including, but not limited to, the Debtor's interest now owned and hereafter acquired in the following types or items of property (all terms used herein shall have the meanings set forth in Article 9 of the Uniform Commercial Code): Accounts; Equipment; Furniture and other Tangible Property; General Intangibles; Chattel Paper;  Instruments.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:
a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.
b) Secured Party or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.
Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

EXHIBIT

8



U.S. Small Business Administration

U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | **Health Options LTC** |
| Guarantor | **John W. Hayes** |
| Borrower | **JEMS Healthcare, Inc.** |
| Lender | **Live Oak Banking Company** |
| Date | **December 20, 2013** |
| Note Amount | **$1,900,000.00** |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated of even date herewith in the principal amount of One Million Nine Hundred Thousand and No/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.  Guarantor waives all rights to:

1)  Require presentment, protest, or demand upon Borrower;

2)  Redeem any Collateral before or after Lender disposes of it;

3)  Have any disposition of Collateral advertised; and

4)  Require a valuation of Collateral before or after Lender disposes of it.

B.  Guarantor waives any notice of:

1)  Any default under the Note;

2)  Presentment, dishonor, protest, or demand;

3)  Execution of the Note;

4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5)  Any change in the financial condition or business operations of Borrower or any guarantor;

6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7)  The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:

1)  Lender failed to obtain any guarantee;

2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3)  Lender or others improperly valued or inspected the Collateral;

4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)   Lender impaired the Collateral;

6)   Lender did not dispose of any of the Collateral;

7)   Lender did not conduct a commercially reasonable sale;

8)   Lender did not obtain the fair market value of the Collateral;

9)   Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)  Lender made errors or omissions in Loan Documents or administration of the Loan;

12)  Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13)  Lender impaired Guarantor's suretyship rights;

14)  Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15)  Borrower has avoided liability on the Note; or

16)  Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.  DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.  SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.  GENERAL PROVISIONS:

A.  ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.  SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.  SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.  JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.  DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.  FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.  LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.  ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.  SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.  CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10.    STATE-SPECIFIC PROVISIONS:

None.

11.  GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.  GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____  (SEAL)
JOHN W. HAYES

EXHIBIT
9



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | **Health Options LTC** |
| Guarantor | **Selena M. Hayes** |
| Borrower | **JEMS Healthcare, Inc.** |
| Lender | **Live Oak Banking Company** |
| Date | **December 20, 2013** |
| Note Amount | **$1,900,000.00** |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated of even date herewith in the principal amount of One Million Nine Hundred Thousand and No/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. **DEFINITIONS:**

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note,

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:

   1)   Require presentment, protest, or demand upon Borrower;

   2)   Redeem any Collateral before or after Lender disposes of it;

   3)   Have any disposition of Collateral advertised; and

   4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:

   1)   Any default under the Note;

   2)   Presentment, dishonor, protest, or demand;

   3)   Execution of the Note;

   4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

   5)   Any change in the financial condition or business operations of Borrower or any guarantor;

   6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

   7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:

   1)   Lender failed to obtain any guarantee;

   2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

   3)   Lender or others improperly valued or inspected the Collateral;

   4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)     Lender impaired the Collateral;

6)     Lender did not dispose of any of the Collateral;

7)     Lender did not conduct a commercially reasonable sale;

8)     Lender did not obtain the fair market value of the Collateral;

9)     Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)    The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)    Lender made errors or omissions in Loan Documents or administration of the Loan;

12)    Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13)    Lender impaired Guarantor's suretyship rights;

14)    Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15)    Borrower has avoided liability on the Note; or

16)    Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10.     STATE-SPECIFIC PROVISIONS:

None.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_Selena M. Hayes_ (SEAL)
SELENA M. HAYES

Health Options Pharmacy
Balance Sheet
December 31, 2017

ASSETS

**EXHIBIT 10**

| Current Assets | | |
|---|---|---|
| PARKWAY OPERATING ACCOUNT | $ | (40,314.33) |
| PARKWAY PAYROLL ACCOUNT | | 0.01 |
| CASH ON HAND | | 1,000.00 |
| INVENTORY | | 192,590.00 |
| CALDWELL MEDICAL EQUIPMENT | | 30,760.96 |
| THIRD PARTY A/R | | 302,852.98 |
| STORE A/R | | 279,299.97 |
| UNIVERSAL A/R | | 63,058.95 |
| UNIVERSAL RESERVE | | 6,305.89 |
| Total Current Assets | | 835,554.43 |

| Property and Equipment | | |
|---|---|---|
| AUTOS | | 150,243.09 |
| Equipment | | 3,680.00 |
| FURNITURE AND FIXTURES | | 26,755.02 |
| LEASEHOLD IMPROVEMENTS | | 215,391.58 |
| MEDICAL EQUIPMENT | | 119,580.32 |
| SOFTWARE | | 141,000.00 |
| POLICIES & PROCEDURES | | 12,018.25 |
| OFFICE EQUIPMENT | | 47,266.86 |
| ACCUMULATED DEPRECIATION | | (539,919.00) |
| ACCUMULATED AMORTIZATION | | (1,685,083.27) |
| CLOSING COSTS | | 82,962.12 |
| RECORDS | | 15,000.00 |
| GOODWIL | | 3,400,000.00 |
| LOAN ORIGINATION FEES | | 80,441.56 |
| Total Property and Equipment | | 2,069,336.53 |

| Other Assets | | |
|---|---|---|
| HAYES & HAYES ENTERPRISES | | 98,314.00 |
| HAYES & HAYES FARMS | | 78,648.83 |
| LOANS TO SHAREHOLDERS | | 362,895.25 |
| Total Other Assets | | 539,858.08 |
| Total Assets | $ | 3,444,749.04 |

LIABILITIES AND CAPITAL

| Current Liabilities | | |
|---|---|---|
| ACCOUNTS PAYABLE | $ | 1,136,591.89 |
| Total Current Liabilities | | 1,136,591.89 |

| Long-Term Liabilities | | |
|---|---|---|
| NOTE PAYABLE CDDC | | 52,771.02 |
| N/P - LIVE OAK/100742 | | 841,626.85 |
| N/P HUDSON DISCOUNT DRUG | | 617,768.86 |
| N/P - S/E TOYOTA - SCION XD | | 2,484.37 |
| N/P S/E TOYOTA 2014 SCION | | 4,127.79 |
| N/P LIVE OAK/101913 | | 1,287,086.92 |
| N/P S/E TOYOTA CAMRY | | 5,848.34 |
| N/P CERTUS 2010 RAV 4 | | 2,523.37 |
| N/P-CERTUS-08 SCION XD | | 719.95 |

Unaudited - For Management Purposes Only

Health Options Pharmacy
Balance Sheet
December 31, 2017

| | | |
|---|---:|---:|
| N/P COM 1 LOC 3575 | 298,200.00 | |
| N/P-ALLY 2016 JEEP | 24,351.66 | |
| Total Long-Term Liabilities | | 3,137,509.13 |
| Total Liabilities | | 4,274,101.02 |
| Capital | | |
| SHAREHOLDER DISTRIBUTIONS | (76,033.10) | |
| RETAINED EARNINGS | (528,557.25) | |
| Net Income | (224,761.63) | |
| Total Capital | | (829,351.98) |
| Total Liabilities & Capital | $ | 3,444,749.04 |